T.C. Memo. 2001-33


UNITED STATES TAX COURT


K & M LA BOTICA PHARMACY, INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10500-99, 17346-99,     Filed February 12, 2001.
            17725-99.


        Held:  Petitioners' motions to compel taking of a
deposition under Rule 75, Tax Court Rules of Practice
and Procedure, denied.


Dennis N. Brager and Howard Rosenblatt, for petitioners.

Ron S. Chun and Angelique M. Neal, for respondent.

_____

        [1]  Cases of the following petitioners are consolidated
herewith:  Khaled Ahmed, docket No. 17346-99, and Khaled Ahmed,
docket No. 17725-99.

MEMORANDUM OPINION

NIMS, Judge:  This matter is before the Court on petitioners' motions, filed pursuant to Rule 75, to compel taking of the deposition of Hussein Darwish.  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to sections of the Internal Revenue Code.

## Background

The facts stated herein are as represented in papers submitted in connection with the parties' discovery efforts, and are taken as true solely for the purpose of deciding petitioners' motions.

The petitioners in these consolidated cases are an individual, Khaled Ahmed, and a corporation solely owned by Mr. Ahmed, K & M La Botica Pharmacy, Inc. (La Botica).  Mr. Ahmed is a licensed pharmacist in the State of California.  Throughout the years at issue, La Botica was engaged in the business of operating pharmacies which sold prescription and over-the-counter medications and treatments.  Mr. Ahmed is also alleged to have been involved in the operation of medical service clinics and a medical laboratory through various nominee entities.

At some time prior to March of 1999, respondent began an examination regarding the income taxes of Mr. Ahmed and the related La Botica corporation.  Thereafter, on March 11, 1999,

respondent issued a notice of deficiency with respect to La Botica's 1995 taxable year. The notice reflected a deficiency attributable in large part to a determination of unreported income and a penalty under section 6663(a) on account of fraud.

Then, on June 24, 1999, respondent issued to Mr. Ahmed and his wife in their individual capacities notices of jeopardy assessment pursuant to section 6861 for the taxable years 1995 through 1998. Section 6861(a) provides for immediate assessment of taxes in the event that the Secretary believes assessment or collection of a deficiency will be jeopardized by delay. In contesting this action, Mr. Ahmed subsequently filed a complaint in the U.S. District Court for the Central District of California seeking judicial review of the jeopardy assessment. A hearing on the matter was held by the District Court judge in August of 1999 and culminated with oral findings of fact and conclusions of law wherein the court found and concluded that the assessment met the criteria of section 7429(b)(3). In connection with this proceeding, Hussein Darwish filed an affidavit, was called as a witness on behalf of respondent, and was subjected to cross-examination by counsel for Mr. Ahmed. Mr. Darwish was employed by Mr. Ahmed at La Botica from August of 1996 until April of 1998, and his testimony related primarily to his experiences with

Mr. Ahmed's business practices, particularly Mr. Ahmed's purported dealings in cash and unauthorized use of others' signatures.

Also in August of 1999, respondent issued notices of deficiency to Mr. Ahmed and his wife with respect to 1995, 1996, 1997, and 1998. For each year, respondent determined tax deficiencies based on unreported income and penalties for the filing of fraudulent returns. The unreported income alleged by respondent for 1995 largely took the form of constructive dividends stemming from payment by La Botica of Mr. Ahmed's personal expenses, from imputed interest on loans made by Mr. Ahmed to La Botica, and from retention by Mr. Ahmed of the proceeds of corporate checks cashed on his behalf at check cashing services. For 1996 through 1998, the principal ground underlying the determined deficiencies was unreported cash sales by various clinics and pharmacies which respondent characterized as nominee entities or alter egos of Mr. Ahmed.

Following the filing of petitions with this Court in response to each of the above notices of deficiency, these cases were initially calendared for trial beginning on October 16, 2000. The cases were later continued, and outstanding discovery motions, including motions to compel taking of Mr. Darwish's deposition, were denied as moot. At present the cases are set for the Court's March 19, 2001, trial calendar, and petitioners

have once again filed motions to compel taking of Mr. Darwish's deposition, to which are attached the notices of objection thereto that were previously served by respondent on petitioners. It is these motions and objections which we consider in the instant Memorandum Opinion.

Lastly, we note that concurrently with certain of the tax proceedings detailed above, a separate civil suit was pending against Mr. Ahmed in California Superior Court. On January 4, 1999, Mr. Darwish had filed a complaint naming as defendants Mr. Ahmed, La Botica, and various other entities. The complaint contained causes of action for intentional concealment, intentional misrepresentation, conspiracy, dissolution of corporation and accounting, declaratory relief, injunction, and appointment of receiver. The factual allegations made in the complaint parallel in many respects those underlying Mr. Darwish's affidavit and testimony in the jeopardy proceeding. This civil suit was apparently settled out of court, as the parties thereto requested that it be dismissed in January of 2000.

## Discussion

Rule 75 governs the taking of depositions of nonparty witnesses in instances where the parties cannot or will not agree

to permit a consensual deposition.  Specifically, Rule 75(b) sets forth the standards controlling the availability of this discovery device, as follows:

> The taking of a deposition of a nonparty witness under this Rule is an extraordinary method of discovery and may be used only where a nonparty witness can give testimony or possesses documents or things which are discoverable within the meaning of Rule 70(b) [any matter which is not privileged and which is relevant to the subject matter involved in the pending case] and where such testimony, documents, or things practicably cannot be obtained through informal consultation or communication (Rule 70(a)(1)) or by a deposition taken with consent of the parties (Rule 74).  If such requirements are satisfied, then a deposition may be taken under this Rule, for example, where a party is a member of a partnership and an issue in the case involves an adjustment with respect to such partnership, or a party is a shareholder of an electing small business corporation (as described in Code Section 1371(b) prior to the enactment of the Subchapter S Revision Act of 1982), and an issue in the case involves an adjustment with respect to such corporation. * * *

The comments accompanying promulgation of the Rule similarly reiterate that:

> The new Rule 75 provides an extraordinary method of discovery which may be used only where the information sought cannot be obtained by informal consultation or by other discovery methods.  For example, if the other requirements of the Rule are satisfied, a deposition might be taken under the Rule in a case involving the tax liability of a limited partner who does not have access to the books and records of the partnership, or where a bank or other person possesses records which are relevant to the tax liability of a party and are otherwise unavailable. [79 T.C. 1141-1142 (1982).]

In the instant proceeding, petitioners assert that they are entitled to depose Mr. Darwish on the following grounds:

>Petitioner wishes to depose Darwish to test the extent of his knowledge and his veracity with respect to the allegations he has previously made, and to determine whether he claims to know of additional information regarding the issues in this case.  Petitioners also wish to depose Darwish to determine whether he has any information, including the names of other potential witnesses, who can shed light on the allegations he has made.

We, however, are satisfied that these reasons are insufficient in the circumstances of these cases to meet the standard imposed by Rule 75 for nonconsensual depositions.

First, underlying Rule 75 is the principle that it provides for an extraordinary method of discovery and therefore should be available only where there exists a specific and compelling basis for its use.  The examples contained in the Rule itself and in the above-quoted comments support such an interpretation.  In each illustration given, the requesting party was seeking specific and precise factual information essential to that party's case.  Conversely, none of the examples was premised on an inchoate hope of uncovering some vaguely defined form of potentially useful information.  It follows that Rule 75 does not sanction "fishing expeditions".

In a similar vein, we are satisfied that Rule 75 is not intended to serve as a substitute for cross-examination at trial. Rule 75 is an appropriate vehicle for obtaining particular information from the sole source where that information is likely to be found; it does not afford an opportunity to question a

witness merely for the purpose of probing veracity and credibility. As this Court previously stated with disapproval in another proceeding involving Rule 75: "It does not appear that any purpose would be served by deposing Nick except to get Nick's testimony before the trial." DeLucia v. Commissioner, 87 T.C. 804, 813 (1986).

Hence, we conclude that before the Court will order a deposition pursuant to Rule 75, the requesting party must allege with a greater degree of specificity than has been shown in this proceeding the nature of the information sought and the grounds for the party's belief that such will be forthcoming from a particular deponent. Here, the first of petitioners' reasons for deposing Mr. Darwish, to test the extent of his knowledge and his veracity, amounts to little more than a request to cross-examine Mr. Darwish before trial. The second reason, to determine whether Mr. Darwish is aware of any further information or witnesses which can shed light on his allegations, merely seeks to interrogate Mr. Darwish generally in the imperfectly formed hope that something might turn up.

In addition, from a practical standpoint, we note that there exists even less justification for such unarticulated probing in the unique circumstances of this case than might be present in other scenarios. Petitioners have already had the opportunity to review the substance of Mr. Darwish's allegations in three forms,

two of which entailed sworn statements. Mr. Darwish's civil complaint, his affidavit in the previous jeopardy proceeding, and his testimony at the jeopardy trial have all served to alert petitioners of his claims regarding what took place at Mr. Ahmed's businesses.

Even more importantly, petitioners have in fact already been afforded a chance to cross-examine Mr. Darwish under oath on matters such as Mr. Ahmed's cash dealings and unauthorized use of signatures. These issues, highly pertinent to the jeopardy assessment, will be equally relevant in the deficiency context.

Lastly, we observe that when the primary substantive questions to be decided in the deficiency cases involve whether Mr. Ahmed had unreported income and engaged in fraudulent behavior, the essential information determinative of his tax liability, as well as of Mr. Darwish's veracity, is within Mr. Ahmed's own knowledge and control.

For the above reasons, petitioners' motions to compel taking of Mr. Darwish's testimony will be denied.

To reflect the foregoing,

<u>Appropriate orders will be issued denying petitioners' Motions to Compel Taking of Deposition of Hussein Darwish</u>.